NO. 14-1944

# United States Court of Appeals

*for the*

# Fourth Circuit

———— ✦ ————

THE TRAVELERS INDEMNITY COMPANY OF AMERICA,

*Plaintiff-Appellant,*

– v. –

PORTAL HEALTHCARE SOLUTIONS, LLC,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, NO. 1:13-CV-917
HONORABLE GERALD BRUCE LEE

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

G. ERIC BRUNSTAD, JR.
*Counsel of Record*
KATE M. O'KEEFFE
MAY K. CHIANG
DECHERT LLP
90 State House Square
Hartford, Connecticut 06103
(860) 524-3999

– and –

JOHN BECKER MUMFORD, JR.
KATHRYN ELIZABETH KASPER
HANCOCK, DANIEL, JOHNSON
  & NAGLE, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
(804) 967-9604

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT .............................................................1

ARGUMENT .......................................................................................5

I.    The Allegations In The Class Action Complaint Unambiguously Do Not Trigger A Duty to Defend. .....................................................5

        A.    The Class Action Complaint Does Not Allege A "Publication." ........7

                1.    The Class Action Complaint Does Not Allege That Portal "Placed" Or "Posted" Medical Records On The Internet. ........7

                2.    The Class Action Complaint Does Not Allege Third-Party Access To Plaintiffs' Medical Records. ...........................9

        B.    The Class Action Complaint Does Not Allege "Unreasonable Publicity" Or "Disclosure" Of Plaintiffs' Private Lives. ...................13

II.    The District Court's Opinion Gives Portal Coverage It Did Not Pay For. ...........................................................................................14

CONCLUSION ................................................................................17

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Am. Econ. Ins. Co. v. Aspen Way Enters., Inc.*,
  No. CV 14-09, 2015 WL 5680134 (D. Mont. Sept. 25, 2015)...........................10

*CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  566 F.3d 150 (4th Cir. 2009) ...............................................6

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*,
  444 F. App'x 370 (11th Cir. 2011) ...................................11

*Defender Sec. Co. v. First Mercury Ins. Co.*,
  803 F.3d 327 (7th Cir. 2015) ...............................................10

*Fuisz v. Selective Ins. Co. of Am.*,
  61 F.3d 238 (4th Cir. 1995) ...............................................6

*Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*,
  792 F.3d 520 (4th Cir. 2015) .............................................1

*OneBeacon Am. Ins. Co. v. Urban Outfitters, Inc.*,
  No. 14-2976, 2015 WL 5333845 (3d Cir. Sept. 15, 2015)................................10

*Parker v. Hartford Fire Ins. Co.*,
  278 S.E.2d 803 (Va. 1981) ...............................................6

*Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*,
  668 F.3d 106 (4th Cir. 2012) ...............................................16

*Recall Total Info. Mgmt., Inc. v. Fed. Ins. Co.*,
  83 A.3d 664, *aff'd* 115 A.3d 458 (Conn. 2015)...........................................10, 11

*United States v. John Doe, Inc. I*,
  481 U.S. 102 (1987)...............................................14

*Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  581 F. Supp. 2d 677 (W.D. Pa. 2008)...............................................14

-ii-

## **PRELIMINARY STATEMENT**

At its core, this appeal involves plainly and simply a conflict over the proper characterization of the allegations in the Class Action Complaint.[1]  The parties agree that Travelers only has a duty to defend Portal if the Class Action Complaint alleges injury arising out of "electronic publication of material that . . . gives unreasonable publicity to a person's private life," or "publication by electronic means of material that . . . discloses information about a person's private life."  JA 51-52; JA 71-72; Portal Br. at 6.  Portal takes no issue with any of the relevant definitions supplied by Travelers and offers no alternative definitions of its own.  It also is undisputed that, in determining whether Travelers has a duty to defend, Virginia law mandates that the court look solely to the allegations in the underlying complaint and compare those to the terms of the relevant Policies.  *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015); Portal Br. at 7.  Thus, the discrete issue presented in this appeal is whether the Class Action Complaint alleges injury arising from a "publication" by Portal that gave "unreasonable publicity to" or "disclosed information about" Plaintiffs' private lives within the plain meaning of those terms.

As demonstrated in Travelers' opening brief and not seriously refuted by Portal, the District Court erred in concluding that a "publication" occurred on the

---

[1]  All abbreviations herein have the definitions set forth in Travelers' opening brief.

basis of its descriptive theory that Portal "posted" or "placed" Plaintiffs' medical records on the internet. *See* Travelers Br. at 20-21. The Class Action Complaint contains no such allegation. Indeed, the state trial court presiding over the underlying action determined that the Class Action Complaint "does not allege an actual release of either plaintiffs' medical reports, or, for that matter, any of the putative class members' medical records to any third person." Addendum A to Travelers Br. at 6a. Because Plaintiffs' alleged injury arises solely from Portal's "failure to safeguard private and confidential health information that was in their custody, control and care," JA 19 ¶ 1, and because a mere "failure to safeguard" information does not establish "publication" or "unreasonable publicity" or "disclosed" information, this Court should reverse.

The plain meaning of "publication" requires both that (1) the publisher take an affirmative action to communicate information and (2) the information actually be announced to the public. *See* Travelers Br. at 20. As the District Court did below, Portal attempts to characterize the Class Action Complaint as alleging that Portal took affirmative action by "placing" the Plaintiffs' medical records on the internet. Portal Br. at 6. But in fact, Plaintiffs allege only that Portal negligently allowed a server to be left unsecured and that, as a result, Plaintiffs' medical records were vulnerable to access by third parties who conducted internet searches of Plaintiffs' names. These allegations simply do not assert that Portal took any af-

firmative action to "place" or "post" Plaintiffs' records on the internet for public viewing.

The Class Action Complaint also does not contain any allegation that Portal actually disseminated Plaintiffs' private information to the public. Portal points only to allegations that Plaintiffs' medical records *could have been* accessed by third parties who ran Google searches of patients' names, not that any third party *did* access those records. Nor does Portal's assertion that the Class Action Complaint alleges access by Google suffice as an allegation that Portal "published" Plaintiffs' medical records. The Class Action Complaint alleges only that two Plaintiffs each accessed her own information by conducting a Google search of her own name; it does not allege any injury as a result of Google "accessing" the information, or Portal "publishing" the information to Google. Further, Google's own explanation of its processes makes clear that only a computer program—not an actual human—would have accessed Plaintiffs' data at the time those searches were run. JA 73-74. Accordingly, the Class Action Complaint fails to allege that Portal disseminated or actually communicated Plaintiff's private information to the public.

Moreover, Portal fails to demonstrate that the Class Action Complaint alleges a publication that either gave "unreasonable publicity to" or "disclosed" Plaintiffs' private information. Portal does not contest Travelers' definitions of these

terms—which require that previously unknown information be circulated public-ly—but contends that these requirements are met by allegations that Plaintiffs' medical records were available on the internet and *could have been* accessed by members of the public running certain Google searches. Portal Br. at 13-14. As the cases cited in Travelers' opening brief (and entirely disregarded by Portal) make clear, an allegation that information *might have been* accessed does not con-stitute publicity or disclosure under the plain meaning of these terms. *See* Travel-ers Br. at 36, 39-41.

Finally, Portal's argument that the discussion in the *amicus* brief goes be-yond Virginia's "eight corners rule" is erroneous and entirely misses the point. The *amicus* brief does not ask the Court to construe the Policies based on extrane-ous materials. The *amicus* brief simply explains that other kinds of available in-surance policies—namely cyber policies—do in fact provide coverage for the types of claims asserted in the Class Action Complaint. The relevant point is simply that, in finding coverage here under policies that offer more basic (and cheaper) insurance than cyber policies, the District Court's decision effectively gives Portal coverage Portal did not buy and Travelers did not agree to provide. The decision below should be reversed.

## ARGUMENT

### I. The Allegations In The Class Action Complaint Unambiguously Do Not Trigger A Duty to Defend.

Despite Portal's best efforts, it simply cannot escape the fact that the allegations in the Class Action Complaint undeniably do not trigger a duty to defend. In asking this Court to affirm the District Court's ruling, Portal invites the Court to commit the same error made below: to ignore the plain wording of the allegations in the Class Action Complaint. The Court should reject Portal's mischaracterizations of Plaintiffs' allegations and find that Travelers does not have a duty to defend Portal under Virginia law.

Portal criticizes Travelers for not citing two specific duty to defend cases that Portal cited in the District Court, suggesting that Travelers ignores Virginia law that it must defend Portal if the Class Action Complaint "alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Portal Br. at 8. On the contrary, Travelers recognizes this exact standard for assessing the duty to defend in its opening brief. Travelers Br. at 18 (quoting *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)). However, Portal advocates an interpretation of this standard whereby a court may read additional or implicit allegations into a complaint so as to force the allegations within the four corners of the policy. *See, e.g.*, Portal Br. at 11-12 (equating Portal's lapse

in data security with the affirmative placement of Plaintiffs' medical records on the internet). This is not allowed under Virginia law.

Virginia adheres to the "potentiality rule" whereby "'an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy.'" *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009) (quoting *Bohreer*, 475 F. Supp. 2d at 584). Yet, this Court has made clear that "the duty to defend is not without limits," *id.*, and a "theoretical" or "mere possibility does not rise to the level of potentiality," *id.* at 159. In the cases that Portal cites, the complaints contained particular allegations that, if proved, would have stated a claim for injuries covered under the relevant policies. *See id.* ("[W]e held that the insurer in *Fuisz v. Selective Insurance Co. of America*, 61 F.3d 238 (4th Cir. 1995), had a duty to defend *only* because the underlying complaint *specifically alleged* conduct that was covered by the policy.") (emphasis added); *Parker v. Hartford Fire Ins. Co.*, 278 S.E.2d 803, 804 (Va. 1981) (insurer had a duty to defend despite policy exclusion for intentional acts because complaint "could have supported a judgment of unintentional trespass"). This Court has established that "the potentiality rule does not require us to abandon the rule of reason," *CACI Int'l*, 566 F.3d at 159, and where, as here, the underlying complaint contains no allegations that fall within the coverage provided by the policy, there is no duty to defend.

6

### A.  The Class Action Complaint Does Not Allege A "Publication."

As set forth in Travelers' opening brief, the plain meaning of the term "publication" requires *both* an affirmative act by the publishing party in furtherance of communicating information *and* an actual announcement or declaration of that information to the public.  Travelers Br. at 20.  Portal offers no contrary definition of its own and instead focuses on one definition Travelers has offered that Portal claims does not require a communication of information to the public—Webster's definition of "publish" as "to place before the public (as through a mass medium): disseminate."  Portal Br. at 10 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (2002)).  Portal's assertion is nonsensical, as the term "disseminate" clearly requires public communication.[2]  Because the Class Action Complaint contains no allegation that Portal took action to "place" Plaintiffs' medical records before the public or that the records were disseminated to the public, Portal cannot possibly be said to have "published" the records and Travelers has no duty to defend.

### 1.  The Class Action Complaint Does Not Allege That Portal "Placed" Or "Posted" Medical Records On The Internet.

Portal mischaracterizes the Class Action Complaint as alleging "that Portal *placed* patients' private medical data open on the internet."  Portal Br. at 6 (empha-

---

[2]  Moreover, the complete definition that Portal cites also includes "to declare publicly: make generally known: disclose, circulate."  Travelers Br. at 20.

sis added).  This is the same mistake that the District Court made when it repeatedly (and erroneously) characterized the Class Action Complaint as alleging that Portal "placed" or "posted" Plaintiffs' medical records on the internet.  *See* Travelers Br. at 20-21.  In fact, the Class Action Complaint alleges no action on the part of Portal that can be fairly characterized as "placing" or "posting" Plaintiffs' records anywhere.

The Class Action Complaint unequivocally seeks damages suffered "as a result of [Portal's] failure to safeguard private and confidential health information that was in their custody, control and care."  JA 19 ¶ 1.  Plaintiffs allege that "Glens Falls Hospital contracted with [Portal] for electronic storage and maintenance of certain medical records," JA 22 ¶ 14, and that "through human error, a secure server's firewall settings left it open to unrestricted access," JA 26 ¶ 40.  Plaintiffs allege that their medical records "were accessible on the internet by unauthorized persons" during the time that the server was unsecure, JA 26 ¶ 39, and seek damages resulting from Portal's failure to "exercise reasonable care" to protect patient information, "adequately monitor" their systems, "apply reasonable policies and procedures" to protect data, and "properly train their agents" to safeguard data, JA 29 ¶ 63.

None of these allegations suggests that Portal "placed" or "posted" Plaintiffs' medical records on the internet, as the District Court held and as Portal would

have this Court believe.  Thus, the District Court's finding of a duty to defend rests on an erroneous reading of the allegations in the Class Action Complaint.  This Court should correct that error.

Portal improperly analogizes the allegations in the Class Action Complaint to "leaving a book on a shelf at a public library or in a bookstore."  Portal Br. at 11.  But a person who leaves a book on a shelf has taken an affirmative and knowing step to "place" the book on that particular public shelf.  Here, Portal took no similar action to affirmatively and purposefully "place" or "post" Plaintiffs' medical records online or anywhere else.  A more accurate analogy is that set forth in Travelers' opening brief, where a lawyer leaves a confidential client file on the desk in his or her unlocked office.  Travelers Br. at 22.  While the lawyer's actions may be negligent, neither the fact that an unauthorized person could potentially enter the office and access the file nor actual access to that file by the client amounts to "publication" of that file by the lawyer.  Likewise, Portal's negligence in leaving Plaintiffs' medical records vulnerable to access by a person conducting certain internet searches is not "publication" of those records by Portal.

### 2.     The Class Action Complaint Does Not Allege Third-Party Access To Plaintiffs' Medical Records.

Not only does the plain meaning of "publication" include actual dissemination of information to the public, Travelers Br. at 20, but courts considering the meaning of "publication" in insurance policies similar to those at issue here have

widely held that allegations of actual communication are essential to trigger a duty to defend, *id.* at 24-30; *see also Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 333 (7th Cir. 2015) (affirming district court that there was no duty to defend because "we cannot draw the conclusion that publication includes the mere recording and storage of information when that information *is not also communicated to another party or entity*") (emphasis added); *Am. Econ. Ins. Co. v. Aspen Way Enters., Inc.*, No. CV 14-09, 2015 WL 5680134, at *14 (D. Mont. Sept. 25, 2015) (no duty to defend because allegations that insured collected and retained consumer's information, without any allegation of disclosure of that information, did not constitute "publication"). Portal criticizes Travelers for relying on cases from other jurisdictions that arise in different contexts, Portal Br. at 16-17, but ignores the overriding principles that these cases establish and that are wholly relevant here: (1) the plain meaning of "'publication' requires dissemination to the public," *OneBeacon Am. Ins. Co. v. Urban Outfitters, Inc.*, No. 14-2976, 2015 WL 5333845, at *2 (3d Cir. Sept. 15, 2015); (2) allegations that an unauthorized person may have accessed information, without allegations of actual access, do not constitute publication, *Recall Total Info. Mgmt., Inc. v. Fed. Ins. Co.*, 83 A.3d 664, 672 (Conn. Ct. App. 2013), *aff'd* 115 A.3d 458 (Conn. 2015); and (3) providing a person with their own private information "involves no dissemination of information

to the general public and does not constitute publication," *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 444 F. App'x 370, 376 (11th Cir. 2011).

Plaintiffs allege that certain medical information "*was accessible* on the internet by unauthorized persons without any security restrictions," JA 19 ¶ 1, and "*could [be]* accessed, viewed, copied, printed and downloaded," JA 25 ¶ 33 (emphasis added). But Plaintiffs do not allege that any unauthorized person actually *did* access view, copy, print, or download the information. In fact, the only specific allegation of access to the medical records contained in the Class Action Complaint is that each Plaintiff accessed her own medical records after running a Google search of her own name. JA 24 ¶¶ 25-32. That Plaintiffs' medical records *could have been* accessed by a third party and were actually accessed by Plaintiffs themselves simply does not constitute publication under the plain meaning of that term. *Creative Hospitality Ventures*, 444 F. App'x at 376; *Recall Total Info.*, 83 A.3d at 672.

Portal also relies on one conclusory and unsupported statement in the Class Action Complaint alleging that "[u]pon information and belief, the statements of [Portal] that none of the aforementioned medical records were accessed or downloaded [are] false," JA 26 ¶ 42, as a specific allegation of publication. Specifically, Portal offers an altered version of this paragraph in its brief, suggesting by artful inter-lineation that it alleges actual communication to a party other than the Plain-

tiffs themselves. *See* Portal Br. at 12 ("[T]he complaint alleges that Portal's claim that 'none of the aforementioned medical records were accessed or downloaded [by a third party] is [sic] false.'"). In fact, paragraph 42 of the Class Action Complaint makes no express reference to third-party access, and the state trial court in the underlying action has already determined that the complaint "does not allege an actual release of either plaintiffs' medical reports, or, for that matter, any of the putative class members' medical records to any third person." Addendum A to Travelers Br at 6a.

Portal next contends that Plaintiffs allege that "third-party Google accessed the information and made available links to that information in response to internet search requests." Portal Br. at 11. Once again, however, Portal ignores the plain wording of Plaintiffs' allegations. The Class Action Complaint states only that Plaintiffs used Google to run searches of their names and then followed the links in the search results to access their own medical records. JA 24 ¶¶ 25, 29. The Class Action Complaint in no way alleges that Google "accessed" Plaintiffs' medical records, let alone that Portal "published" the records to Google. Moreover, Plaintiffs' alleged injuries arise from Portal's failure to adequately maintain and protect the records stored on its server, JA 29-30 ¶¶ 63-65, not from Google "accessing" those records.

In reality, even if the Class Action Complaint did actually allege access by Google, this would not constitute "publication" of the medical records by Portal. As set forth in Travelers' opening brief, Google's own explanation of its operations—relied on by Portal below—makes clear that at no point in its process does any human being at Google review, read, or in any way access the information added to its index.  Travelers Br. at 32-33; JA 73-74.  Access by a computer program involves no broadcast or announcement to the general public and is not a "publication" within the plain meaning of that word.

### B.    The Class Action Complaint Does Not Allege "Unreasonable Publicity" Or "Disclosure" Of Plaintiffs' Private Lives.

Even if the Class Action Complaint alleged a "publication" by Portal (which it does not), Travelers still does not have a duty to defend unless the publication is also alleged to have given "unreasonable publicity" to, or "disclosed" information about, Plaintiffs' private lives.  As set forth in Travelers' opening brief, alternative definitions for "publicity" and "disclosure" universally require that information be "disseminated," "exposed," or "spread" to gain "public notice" or become "general knowledge."  *See* Travelers Br. at 34, 38.

Portal does not dispute that either "publicity" or "disclosure" of Plaintiffs' medical records requires a communication of the information to the public, but contends that allegations that Plaintiffs' medical information was available on the internet and *could have been* accessed by members of the public who ran Google

searches of Plaintiffs' names, and that the information was "compromised and/or disclosed," adequately satisfy this requirement. Portal Br. at 13-14. That the records could potentially have been viewed does not amount to either publicity or disclosure under the plain meaning of those terms. The cases Travelers cites in its opening brief, which Portal ignores, hold as much. *See, e.g., United States v. John Doe, Inc. I*, 481 U.S. 102, 109 (1987) ("disclosure" of information requires that "matters must be disclosed to *someone*") (emphasis in original) (internal quotation marks and citation omitted); *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 701 (W.D. Pa. 2008) (the plain meaning of publicity "clearly requires an allegation that an individual's private information was somehow made known to the public"). The decision below should be reversed for this reason as well.

## II.    The District Court's Opinion Gives Portal Coverage It Did Not Pay For.

Portal takes issue with the *amicus* brief filed by the American Insurance Association ("AIA") and the Complex Insurance Claims Litigation Association ("CICLA"), arguing that the brief goes beyond the "eight corners" of the Class Action Complaint and Policies and opines on matters of little relevance to this Court's inquiry. Portal Br. at 17-18. Portal is mistaken. The *amicus* brief simply demonstrates an important consequence of the District Court's erroneous reading of the

Class Action Complaint:  the extension of insurance coverage to Portal which Portal never purchased and Travelers never contracted to provide.

The Policies are two commercial general liability ("CGL") policies that Portal purchased—policies that, the *amici* explain, do not cover an insured's failure to safeguard computerized records.  AIA/CICLA Br. at 6-7.   The inability of such policies to cover lapses in data security is not only evident by the plain terms of Portal's policies, as demonstrated above, but also by the robust market for cyber insurance coverage that the AIA and CICLA describe.  *Id*. at 6-10.   Indeed, the market for cyber insurance arose to address data security coverage that CGL policies do not provide.  *Id*. at 6-7.

Portal argues that "what other policies may or may not cover does not affect the plain terms of the policies at issue here and the resulting coverage."  Portal Br. at 18.  But what Portal ignores is that the relevant inquiry does not focus simply on the terms of the Policies, but rather on the terms of the Policies *and* the specific allegations in the underlying litigation.  Here, the allegations in the Class Action Complaint only assert a failure to secure electronic data, not a publication of that data.  By illuminating the gap in coverage that an insured may face following such a lapse in data security, the *amici* illustrate that the type of policy that Portal purchased simply does not extend to the specific injury alleged in the Class Action Complaint.

15

In finding coverage in this case on the basis of Plaintiffs' allegations that Portal failed to safeguard data, the District Court effectively converted Portal's CGL policies into cyber insurance coverage and gave Portal the benefit of insurance that it did not in fact purchase. This Court has previously recognized the dangers of "hold[ing] an insurance company liable for risks for which it never contracted and for which it never received premiums," *Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 113 (4th Cir. 2012), and in this case should reject the District Court's mistaken reading of the Class Action Complaint and reverse the decision below.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Travelers' opening brief, the Court should reverse the District Court's decision and hold that Travelers does not have a duty to defend Portal in the Class Action.

Dated:   November 30, 2015

DECHERT LLP

By:    <u>/s/ *G. Eric Brunstad, Jr.*  </u>
G. Eric Brunstad, Jr.
*Counsel of Record*
Kate M. O'Keeffe
May K. Chiang
DECHERT LLP
90 State House Square
Hartford, CT 06103
(860) 524-3999

John Becker Mumford, Jr.
Kathryn Elizabeth Kasper
HANCOCK DANIEL JOHNSON & NAGEL, PC
4701 Cox Road Suite 400
Glen Allen, VA 23060
(804) 237-7411

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This briefs contains 3,708 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(a)(7)(B)(iii). Microsoft Word 2010 was used to calculate the word count.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font.

/s/ G. Eric Brunstad, Jr.

## CERTIFICATE OF SERVICE

I certify that on November 30, 2015 the foregoing document was filed with the clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ G. Eric Brunstad, Jr.